```
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

IVETTE ALVALLE,

     PLAINTIFF
                                    12 Civ 4087(DLC)(KNF)
     vs                             PLAINTIFF'S FIRST AMENDED
                                    COMPLAINT [JURY TRIAL]
THE CITY OF NEW YORK, a
Municipal entity, NEW YORK
CITY POLICE OFFICERS "JOHN
ROES" and "MARY DOES", in their
individual capacities and in
their official capacities,
NEW YORK CITY POLICE OFFICERS
DAMEL JONES, Shield # 4160,
KENNETH SLAUGHTER, Shield #
8012, SEAN CONNORS, Shield
# 31973, and NEW YORK
POLICE SERGEANT KAREN FERRAR,
Shield # 1637, individually
and in their official
capacities,

     DEFENDANTS
_____
```

## I.   INTRODUCTION

1. This is a litigation which arises out of the Plaintiff's arrest detention and custodial arrest and detention commencing on April 30, 2012 at or about 3:30 P.M. and concluding on May 1, 2012 when the Plaintiff was released from Manhattan Central Booking and told she could leave and go home.

2. The Plaintiff asserts that she was unreasonably and wrongly and unnecessarily detained and falsely arrested and, associated therewith, excessively detained when she was detained in custody rather than released with a Summons or Desk Appearance Ticket for the alleged, unfounded offense with which she was charged without the requisite probable cause for either the arrest or the charge.

3. Finally, the Plaintiff asserts that she was subjected to the detention, custodial arrest and the excessive detention associated therewith for the alleged unfounded charge per the quality of life crime offense enforcement initiative and policy of the New York City Police Department which, as implemented, has resulted in the unfounded and baseless arrests of individuals for alleged unfounded quality of life offenses.

4. This is an action in which the Plaintiff seeks relief for the violation of her rights as guaranteed under the laws and Constitution of the United States and, as well, under the laws and Constitution of the State of New York.

5. The Plaintiff seeks monetary damages and such other relief, including injunctive relief and declaratory relief [if appropriate], as may be in the interest of justice and as may be required to assure that the Plaintiff secures full and complete relief and justice for the violation of her rights.

## II. JURISDICTION

6. Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 and 1367 in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the First, Fourth and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of New York.

7. The Plaintiff requests that the Court invoke pendent claim and pendent party jurisdiction. The State law claims derive from the same occurrence and transaction which gives rise to the federal law claims and they have a common nucleus of operative fact with the federally based claims.

8. The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff seeks, in addition to monetary damages, whatever other relief is needed to provide full and complete justice including, if appropriate, declaratory and injunctive relief.

9. This is an action in which the Plaintiff seeks relief for the violation of her rights as guaranteed under the laws and Constitution of the United States and, as well, as guaranteed under the laws and Constitution of the State of New York.

10. Venue of this Court is properly invoked in as much the Plaintiff resides in the geographic boundaries of this Court, the actions and conduct complained of herein took place within the geographic boundaries of this Court, and the Defendants have offices for doing business within the geographic boundaries of this Court.

11. To the extent that there are prerequisites for the filing and pursuit of the pendent State law claims, the Plaintiff has met those conditions.

### III. THE PARTIES

12. The Plaintiff is an American citizen and resident of the City of New York, the County of the Bronx, and the State of New York.

13. The Defendant City of New York is a municipal entity which was created under the authority of the laws and Constitution of the State of New York and which, under the enabling law of the State of New York, has, among other powers, the power to maintain a police department for the purpose of protecting the welfare of those who reside in the City of New York.

14. Defendants "John Roes", "Mary Does", Damel Jones, Shield # 4160, Kenneth Slaughter, Shield # 8012, Sean Connors, Shield # 31973, and Karen Ferrar, Shield # 1637, are New York City line and command police officers and agents and employees of the City of New York. Although their actions and conduct herein described were unlawful and wrongful and otherwise violative of the Plaintiff's rights as guaranteed under the laws and Constitution of the United States and as guaranteed under the laws and Constitution of the State of New York, they were taken in and during the course of their duties and functions as New York City Police Officers and as agents and employees of the City of New York and incidental to the otherwise lawful performance of their duties and functions as New York City Police Officers and agents and employees of the City of New York.

IV. ALLEGATIONS

15. This is a litigation which arises out of the Plaintiff's arrest on Monday April 30, 2012 in the afternoon hours at or abo9ut 3:30 P.M. in the vicinity the of Amsterdam Hardware Store at 147 Amsterdam Avenue and 66th Street, New York City, New York and continuing thereafter until the Plaintiff was released from Manhattan Central Booking at or about 8:30 P.M. on Tuesday, May 1, 2012.

16. The Plaintiff also asserts that, in association with her arrest, she was subjected to excessive detention when she was detained in custody rather than released with a Summons or Desk Appearance Ticket for the alleged and unfounded violation of the provisions of law for which she was purportedly arrested (without probable cause).

17. Finally, the Plaintiff asserts that she was subjected to the arrest and excessive detention for the alleged and unfounded offense as part of a quality of life crime enforcement policy of the New York City Police Department, the result of which propels, among other things, probable cause lacking arrests and excessive detentions.

18. The Plaintiff, who is an American citizen of Puerto Rican national origin and resident of the City of New York, the County of the Bronx, and the State of New York, is fifty two [52] years of age.

19. The Plaintiff's birth date March 4, 1960.

20. The Plaintiff resides at 1534 Selwyn Avenue, Apt. # 1A, Bronx, New York 10457.

21. The Plaintiff has resided at the foregoing location for approximately thirty [30] years.

22. At present, the Plaintiff resides at the foregoing address with her sister.

23. The Plaintiff is a high school graduate.

24. The Plaintiff has received some post high school education.

25. The Plaintiff has two adult children, one who is twenty three and the other of whom is thirty five.

26. On April 30, 2012 the Plaintiff was employed as a cashier at the Amsterdam Hardware Store which is located at 147 Amsterdam Avenue at 66th Street, New York City, New York.

27. The Plaintiff had been so employed as a cashier at the Amsterdam Hardware Store for approximately one month having seen an advertisement for the position and having applied for such been employed by the owner-manager of Amsterdam Hardware.

28. Prior to her employment at the Amsterdam Hardware Store, the Plaintiff had been unemployed for a brief period of time.

29. Before her period of unemployment, the Plaintiff had been employed at a residence home for high functioning disabled adults for a brief period of approximately seven weeks.

30. Over the course of time, the Plaintiff has held numerous positions including, among the most recent, as a manager at KB Toys for approximately seven years or thereabouts; and as an intake coordinator/counselor at the Fortune Society for a period of approximately two years.

31. Prior to her April 30, 2012 arrest, the Plaintiff had been arrested, many years ago, on one prior occasion. The arrest related to the Plaintiff's marriage status. The Plaintiff was placed on probation for two years in connection with said matter.

32. The incident out of which this litigation derives commenced on April 30, 2012 at or about 3:30 P.M. at the Amsterdam Hardware Store, which is located at 147 Amsterdam Avenue at 66th Street, New York City, New York, when the Plaintiff was falsely detained and arrested; and the incident concluded at approximately 8:30 P.M. on May 1, 2012 when the Plaintiff was released from Manhattan Central Booking to which she had been transported from the 20th Precinct where she had been taken, initially, after her arrest as described herein.

33. On April 30, 2012, the Plaintiff was working as a cashier inside of the Amsterdam Hardware Store at 147 Amsterdam Avenue at 66th Street where she had been regularly employed in that position (as a cashier) for approximately one month prior thereto.

34. At or about 3:30 P.M., the Plaintiff was at the cash register which is at a counter in or about the middle of the Amsterdam Hardware Store.

35. The Plaintiff was behind the counter on which the cash register was situated and had been behind the counter where the cash register is situated for the period of her shift which commenced at or about 8:00 A.M. and was to conclude at or about 5:00 P.M.

36. A male, appearing to be eighteen years of age or thereabouts, came up to the cash register, where the Plaintiff was situated in her position as a cashier, with a spray can of paint.

37. The Plaintiff did not provide the Plaintiff with the spray can of paint.

38. Rather, such had been provided to the afore-described male by Mark Grouer, the owner-manager of the Amsterdam Hardware Store.

39. The spray paint was in a locked case which the owner-manager was required to unlock in order to obtain the spray paint for the male.

40. The Plaintiff did not sell the spray paint to the male.

41. The Plaintiff had no sales functions.

42. The only function which the Plaintiff performed was to accept money at the cash register for any items purchased by a customer including any items provided to the customer, by the owner-manager, or other sales person from any locked case in which an item might be contained.

43. When the male appeared at the cash register, the owner-manager told the Plaintiff to ring up the sale.

44. The Plaintiff conducted the cash register transaction as directed to do so by the owner-manager and the male left the Amsterdam Hardware Store.

45. Within a very brief period, three white male uniformed New York City police officers entered into the Amsterdam Hardware Store.

46. The Plaintiff was directed by one of the uniformed officers to get her identification and to go outside of the store with them.

47. The Plaintiff complied and, as she left the store with the three white male uniformed officers, the owner-manager left the store with them.

48. Once outside of the Amsterdam Hardware Store, the Plaintiff saw three other New York City police officers, one uniformed white male officer, one uniformed white female officer, and a Black plain clothes officer (believed to be a detective).

49. The Plaintiff was informed that she was going to be taken to the Precinct and issued a ticket for selling spray paint to the afore-described male.

50. The Plaintiff was informed that she would be at the Precinct for only a brief period and would be released with the ticket.

51. At that time, the owner-manager stated to the police that he was the owner-manager and that the police should issue the ticket to him.

52. The police in question declined to do so –there or elsewhere, and then handcuffed the Plaintiff and placed the Plaintiff in the back seat of a marked New York City police car, along with the female uniformed police officer, and the Plaintiff was transported to the 20th Precinct believed to be in the vicinity of 83rd Street or thereabouts between Columbus Avenue and Amsterdam Avenue.

53. The Plaintiff was processed at the 20th Precinct.

54. Among other things, the Plaintiff was frisk searched, she was fingerprinted, and she was photographed.

7

55. The Plaintiff was placed in a cell at the Precinct.

56. The Plaintiff remained at the Precinct until approximately 3:30 A.M. on May 1, 2012 when she was then transported to Manhattan Central Booking.

57. During the period the Plaintiff was at the 20th Precinct, the Plaintiff asked on at least two occasions what was going on and why she was being held in custody and detention given that, when she was arrested and initially taken into custody, she had been informed that she would only be detained for a brief period and, then, released with a ticket.

58. The Plaintiff was told that there were problems with the machines that were associated with the processing.

59. Throughout her detention and custodial arrest the Plaintiff, who had been treated previously for an anxiety condition, became increasingly more anxious about what was taking place.

60. Eventually, the Plaintiff was transported to Manhattan Central Booking.

61. The Plaintiff remained at Manhattan Central Booking until approximately 8:30 P.M. on May 1, 2012 when she was released from Manhattan Central Booking and informed she could leave and go home.

62. The Plaintiff did leave Manhattan Central Booking and did go home.

63. It is believed that the New York County District Attorney's Office declined to prosecute the Plaintiff and, in association with prosecution, declined to produce her at an arraignment.

64. Accordingly and as noted, the Plaintiff left Manhattan Central Booking and went home never to have to appear in Court because no charges were formally presented.

65. Thereafter, on or about Friday, May 4, 2012, the Plaintiff went to the psychiatric health care provider who had been treating her for anxiety and whose treatment had, up to this point, helped the Plaintiff.

8

66. The Plaintiff went to her psychiatric health care provider because she was continuing to suffer increased anxiety commencing with her custodial detention on April 30, 2012.

67. The Plaintiff was given some medication as a regiment to assist her in addressing her anxiety condition.

68. The Plaintiff committed no criminal offense or other offense under and of the law whatsoever and no reasonable police officer could have believed that the Plaintiff committed any criminal offense or any other offense under and of the law.

69. The Plaintiff was unreasonably and unlawfully detained and then unreasonably and unlawfully arrested and taken into custody and unreasonably, excessively and unnecessarily held in custody until she was released from custody approximately twenty nine hours after first being detained and arrested and taken into custody.

70. There was no basis for the Plaintiff's detention and eventual custodial arrest by the New York City police officers, each of whom is an agent and employee of the City of New York.

71. While the actions and conduct of the New York City police officers were unlawful they were taken in the course of their duties and functions and incidental to the otherwise lawful performance of those duties and functions as New York City police officers and as agents and employees of the City of New York.

72. There was no basis for the detention of the Plaintiff and there was no probable cause for the custodial arrest of the Plaintiff.

73. The Plaintiff was detained without lawful basis for such and she was otherwise falsely arrested.

74. There was no basis for the excessive custodial detention of the Plaintiff in lieu of her release with a Summons or Desk Appearance ticket or the outright voiding of the arrest which was unlawful and which could and should have been nullified.

75. The actions and conduct herein described were propelled by the quality of life crime offense enforcement initiatives of the City of New York which is grounded in the philosophy of the "ends justifies the means".

76. Such quality of life crime offense enforcement initiative propels officers to make stops, detentions, and arrests where there is no probable cause for such and no basis for the stop and detention of individuals and, by such, to generate arrest statistics and to meet quotas and goals imposed by the City of New York on its police officers to make quality of life arrests otherwise to make examples of individuals in the hope that such would depress quality of life crime offenses and for that matter other crime offenses.

77. The policy and practices have a disproportionate impact on persons of color who, because of their race and/or Latino national origin or perceived national origin, are, for no other reason but the race and/or national origin factor, singled out for stops, detentions, and arrests.

78. The Plaintiff was unlawfully detained and was otherwise falsely arrested and subjected to unnecessary, unreasonable, and excessive detention to racially and/or national origin discriminatory conduct.

79. The actions, conduct, policies and practices and customs herein described violated the Plaintiff's rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

80. The actions, conduct, policies and practices, and customs violated the Plaintiff's rights under the laws and Constitution of the State of New York including false arrest, excessive, unnecessary, and unreasonable detention, and to racial and/or national origin discrimination.

81. The actions, conduct, policies and practices and customs were negligent and otherwise the proximate cause of the injuries and damages suffered by the Plaintiff.

82. The Plaintiff suffered injuries and damages including loss of liberty, fear, anxiety, mental distress,

emotional anguish, and psychological trauma and physical pain and suffering.

83.  The Plaintiff has not yet placed a monetary value on the damages which he incurred although he believes them to be substantial and to include compensatory and punitive damages.

84.  The Plaintiff has no other avenue for redress but for the institution of this litigation.

## V.  CAUSES OF ACTION

### A.  FIRST CAUSE OF ACTION

85.  The Plaintiff reiterates Paragraph #'s 1 through 84 and incorporates such by reference herein.

86.  The Plaintiff was unlawfully stopped and detained and excessively held in custody and falsely arrested in violation of her rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

87.  The Plaintiff suffered injuries and damages.

### B.  SECOND CAUSE OF ACTION

88.  The Plaintiff reiterates Paragraph #'s 1 through 87 and incorporates such by reference herein.

89.  The Plaintiff was unlawfully stopped and detained and excessively detained and falsely arrested in violation of her rights as guaranteed under the laws and Constitution of the State of New York.

90.  The Plaintiff suffered injuries and damages.

### C.  THIRD CAUSE OF ACTION

91.  The Plaintiff reiterates Paragraph #'s 1 through 90 and incorporates such by reference herein.

92.  The Plaintiff was subjected to racially and/or national origin discriminatory treatment in violation of her rights as guaranteed under the Fourteenth Amendment to

11

the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

93. The Plaintiff suffered injuries and damages.

### D. FOURTH CAUSE OF ACTION

94. The Plaintiff reiterates Paragraph #'s 1 through 93 and incorporates such by reference herein.

95. The Plaintiff was subjected to racially and/or national origin discriminatory treatment in violation of her rights as guaranteed under the laws and Constitution of the State of New York.

96. The Plaintiff suffered injuries and damages.

### E. FIFTH CAUSE OF ACTION

97. The Plaintiff reiterates Paragraph #'s 1 through 96 and incorporates such by reference herein.

98. The Plaintiff was excessively detained and falsely arrested in violation of her rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

99. The Plaintiff suffered injuries and damages.

### F. SIXTH CAUSE OF ACTION

100. The Plaintiff reiterates Paragraph #'s 1 through 99 and incorporates such by reference herein.

102. The Plaintiff was excessively detained and falsely arrested in violation of her rights as guaranteed under the laws and Constitution of the State of New York.

103. The Plaintiff suffered injuries and damages.

### G. SEVENTH CAUSE OF ACTION

104. The Plaintiff reiterates Paragraph #'s 1 through 103 and incorporates such by reference herein.

105. The policies, practices and customs herein described propelled the actions and conduct herein. Those

policies, practices, and customs violated the Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

106.   The Plaintiff suffered injuries and damages.

### P.   SIXTEENTH CAUSE OF ACTION

107.   The Plaintiff reiterates Paragraph #'s 1 through 106 and incorporates such by reference herein.

108.   The actions and conduct and policies, practices and customs herein were negligent and otherwise violative of the Plaintiff's rights under the laws and Constitution of the State of New York.

109.   The Plaintiff suffered injuries and damages.

### Q.   SEVENTEENTH CAUSE OF ACTION

110.   The Plaintiff reiterates Paragraph #'s 1 through 109 and incorporates such by reference herein.

111.   Pursuant to and under pendent State law and pendent State claim jurisdiction and independent of the federally based claim against the Defendant City of New York, the Defendant City of New York is responsible, under State law claims, for the actions and conduct of its Defendant Officers, as employees and agents of the City of New York, pursuant to the doctrine of <u>respondeat</u> <u>superior</u>.

112.   The Plaintiff suffered injuries and damages.

### R.   EIGHTEENTH CAUSE OF ACTION

113.   The Plaintiff reiterates Paragraph #'s 1 through 112 and incorporates such by reference herein.

114.   When the Defendant City of New York represents its Officers in federal civil rights litigations alleging unconstitutional actions by its officers, uniformly and as a matter of policy and practice indemnifies its Officers for any award of both punitive damages and compensatory damages.

115. The Officer executes a retainer which requires the Officer, in return for indemnification, to subordinate his or her interests to the City's interests.

116. The City of New York is, under the circumstances, the real party in interest.

117. The named and unnamed individual Defendants are employees and agents of the City of New York and their conduct, as described, was taken in the course of their duties and functions as New York City Police Officers and, in their capacities as such, as agents and employees of the City of New York.

118. Their actions and conduct, while unlawful and unconstitutional, nonetheless were actions and conduct taken to the otherwise lawful performance of their duties and functions as agents and employees of the City of New York.

119. The Plaintiff is entitled to recover against the City of New York for the conduct of its named and unnamed Officers under the federal claim jurisdiction pursuant to the doctrine of <u>respondeat superior</u>.

120. The Plaintiff suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

    [a] Invoke pendent party and pendent claim jurisdiction.

    [b] Award appropriate compensatory and punitive damages.

    [c] Award appropriate declaratory and injunctive relief.

    [d] Empanel a jury.

    [e] Award attorney's fees and costs.

    [f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED: New York, New York
       August 10, 2010

                Respectfully submitted,

                /s/James I. Meyerson\_\_\_
                JAMES I. MEYERSON
                64 Fulton Street @ Suite # 502
                New York, New York 10038
                [212] 226-3310
                [212] 513-1006/FAX
                jimeyerson@yahoo.com
                ATTORNEY FOR PLAINTIFF
                BY:_____

MELISSA WACHS, ESQ.
Assistant Corporation Counsel
City of New York
Department of Law
Special Federal Litigation Division
100 Church Street-3rd Floor
New York, New York 10007
[212] 442-6486
[212] 788-9776/FAX
mwachs@law.nyc.gov
ATTORNEY FOR DEFENDANT CITY OF NEW YORK
BY:_____

AFFIRMATION OF SERVICE

    James I. Meyerson, attorney for the Plaintiff Ivette Alvalle, affirms under penalty of law and the threat of the imposition of sanction by this Court that on the 10th day of August, 2012, I did serve a copy of the foregoing First Amended Complaint on the attorney for the already served Defendant City of New York by emailing a copy of the same, as follows: Melissa Wachs, Esq., Assistant Corporation Counsel, City of New York, Department of Law, Special Federal Litigation Division, 100 Church Street-3rd Floor, New York, New York 10007 [212] 442-6486/[212] 788-9776 [FAX]/mwachs@law.nyc.gov

DATED: New York, New York
       August 10, 2012

                                Respectfully submitted,

                                /s/James I. Meyerson___
                                JAMES I. MEYERSON
                                64 Fulton Street-Suite # 502
                                New York, New York 10038
                                [212] 226-3310
                                [212] 513-1006
                                jimeyerson@yahoo.com
                                ATTORNEY FOR PLAINTIFF
                                BY:_____